PER CURIAM.
L.G. appeals the trial court’s juvenile disposition order committing him to moderate-risk residential placement as a result of his delinquent acts for the offenses of sexual battery on a child under 12 years of age by a defendant less than 18 years of age. We reverse the disposition entered because the lower court erred as a matter of law in deciding it had no legal authority to place the child on probation for such acts.
Following the entry of the order for delinquency detention, the Department of Juvenile Justice filed a pre-disposition report which recommended minimum-risk residential placement.[1] During the dispo *1142 sition hearing, the lower court concluded, after examining the provisions of sections 985.03(44), and 985.03(46)(a) and (b), Florida Statutes (2005), that probation was not an option and, as stated, committed the child to a moderate-risk residential program.
Our standard of review of a trial court’s interpretation of a statute is de novo. See Koile v. State, 934 So.2d 1226, 1229 (Fla.2006); Direct Gen. Ins. Co. v. Morris, 884 So.2d 1077, 1078 (Fla. 1st DCA 2004). In deciding that it was not empowered to order probation, the lower court erroneously construed the provisions of subsections (44) and (46) in pari materia. Section 985.03(44) provides as follows:
“Probation” means the legal status of probation created by law and court order in cases involving a child who has been found to have committed a delinquent act. Probation is an individualized program in which the freedom of the child is limited and the child is restricted to noninstitutional quarters or restricted to the child’s home in lieu of commitment to the custody of the department. Youth on probation may be assessed and classified for placement in day-treatment probation programs designed for youth who represent a minimum risk to themselves and public safety and do not require placement and services in a residential setting.
Section 985.03(46)(a) and (b), relating to minimum-risk nonresidential and low-risk residential placement, provides as follows:
“Restrictiveness level” means the level of programming and security provided by programs that service the supervision, custody, care, and treatment needs of committed children.... The restrictiveness levels of commitment are as follows:
(a) Minimum-risk nonresidential.— Programs or program models at this commitment level work with youth who remain in the community and participate at least 5 days per week in a day treatment program. Youth assessed and classified for programs at this commitment level represent a minimum risk to themselves and public safety and do not require placement and services in residential settings. Youth in this level have full access to, and reside in, the community. Youth who have been found to have committed delinquent acts that involve firearms, that are sexual offenses, or that would be life felonies or first degree felonies if committed by an adult may not be committed to a program at this level.
(b) Low-risk residential. — Programs or program models at this commitment level are residential but may allow youth to have unsupervised access to the community. Youth assessed and classified for placement in programs at this commitment level represent a low risk to themselves and public safety but do require placement and services in residential settings. Children who have been found to have committed delinquent acts that involve firearms, delinquent acts that are sexual offenses, or delinquent acts that would be life felonies or first degree felonies if committed by an adult shall not be committed to a program at this level.
(Emphasis added.)
The issue in this case is whether section 985.03(44) should be interpreted as authorizing probation as a sanction for a child found to have committed any type of delinquent act, without reference to the limiting language included in section 985.03(46)(a) and (b). The court’s error in the present case was in construing the sexual offenses language of subsection (46), pertaining to restrictiveness levels of commitment, as applying to the probation provisions of *1143 subsection (44), despite the lack of such language therein.
In so interpreting the statute, the court overlooked pertinent rules of statutory construction, particularly the rule stating that where the legislature has used a term in one part of the statute, but has omitted it from another part of the same provision, the court “will not imply it where it has been excluded.” Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995). Stated differently, “it is a basic principle of statutory construction that courts ‘are not at liberty to add words to statutes that were not placed there by the Legislature.’ ” Seagrave v. State, 802 So.2d 281, 287 (Fla.2001) (quoting Hayes v. State, 750 So.2d 1, 4 (Fla.1999)).
In applying the above rules, the language of section 985.03(44) clearly provides that “probation” in regard to a child who is found to have committed a delinquent act is an individualized program that limits the freedom of a child who is not committed to the custody of the Department. Such children “may be assessed and classified for placement in day-treatment probation programs designed for youth who represent a minimum risk to themselves and public safety and do not require placement and services in a residential setting.” In contrast, the provisions of section 985.03(46) relate to restrictiveness levels applicable to children who are not eligible for non-custodial care. As both parties and the trial court recognize, subparagraphs (a) and (b) of subsection (46) contain language which provides that youths who have been found to have committed delinquent acts involving firearms, sexual offenses, life felonies, or first-degree felonies if committed by an adult “may not be committed to a program at this level.”
The trial court’s implicit incorporation of the limiting language of subsection (46) into subsection (44) is contrary to long-recognized principles governing statutory construction. Where the legislature has used a term in one part of the statute and excluded it in another, it is improper to imply the term in a provision where it has been otherwise excluded. Because the legislature did not include language in the probation definition limiting the imposition of probation for certain specified delinquent acts, the lower court erred in so doing.
The disposition order is REVERSED, and the case is REMANDED with directions for the court to consider in its discretion whether probation is an appropriate alternative disposition to residential placement.
ERVIN, WEBSTER, and HAWKES, JJ., concur.

. After the trial court later entered the disposition order, the Department filed an amended report recommending moderate-risk residential placement.